IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

IN RE:

MAYAGUEZ ADVANCED RADIOTHERAPY CENTER

          Debtor(s)

MAYAGUEZ ADVANCED RADIOTHERAPY

          Plaintiff

ADVANCED CARDIOLOGY CENTER, CORP

         Defendant(s)

CASE NO. 09-4540 BKT

CHAPTER

ADVERSARY NO. 09-00111

FILED & ENTERED ON 02/10/2010

<u>OPINION AND ORDER</u>

     Before this Court is Plaintiff-Debtor Mayaguez Advanced Radiotherapy Center's ("MARC") Brief in Support of Request for Sanctions [Dkt. No. 32] and Defendant Advanced Cardiology Center Corporation's ("ACC") Legal Brief in Support of Opposition to Motion for Sanctions and of Motion to Dismiss and/or to Prohibit Use, Sell or Lease of Collateral and/or for adequate Protection Payment [Dkt. No. 33]. On 6/5/2009, MARC filed the instant adversary proceeding for the avoidance of several attachments and garnishments over the assets of MARC and in favor of ACC. The parties reached an agreement and filed a joint stipulation on 6/19/2009 [Dkt. No. 5] which purportedly resolved all matters in dispute between the parties. The stipulation was approved by the court on 7/9/209 [Dkt. No. 6], and judgment was entered closing the adversary on 7/22/2009 [Dkt. No. 8]. Shortly thereafter on 7/31/2009, plaintiff MARC moved the court for sanctions against defendant ACC for failure to carry out the terms of the stipulation, specifically with regards to a payment of $36,040.46 collected post petition.

     On 11/12/2009, this Court held a hearing in which it ordered the parties to file simultaneous briefs on the issue of the secured status of ACC and their entitlement to adequate protection payments based on each parties interpretation of the Stipulation, and to refrain from filing dispositive motions until this

matter was determined by the Court. In response to this order the parties filed the motions presently before us. Even though, Plaintiff MARC filed a sur-reply to ACC's Legal Brief on 1/25/2010 [Dkt. No. 34], the Court did not consider this filing in determining the legal status of the parties for the purpose of this Opinion and Order.

A stipulation is a negotiated contract between the parties that resolves all or a portion of the outstanding issues between them. A well established guideline for the interpretation of contracts is the "parol evidence rule" which states "where the parties put their engagement in writing all prior negotiations and agreements are merged in the instrument, and each is bound by its terms unless his signature is obtained by fraud or the contract be reformed on the grounds of fraud or mutual mistake, or the contract is illegal." Wheeler v. Blumling, 521 F.3d 1 (1st Cir. 2008). In Wheeler, the Court refused to admit extrinsic evidence where there was no allegation of fraud or mistake but was offered to contradict particular terms in the contract. The introduction of extrinsic evidence to escape the unwanted effects of a contract "is exactly what the parol evidence rule forecloses." Id. Article 1233 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3471 and the "parol evidence rule" both preclude reference to extrinsic evidence where the terms are clear. Borshow Hosp. & Medical v. Cesar Castillo, 96 F.3d 10, 15 (1st Cir. 1996).  The Puerto Rico parol evidence rule will allow for the introduction of extrinsic evidence only in the event the contract is ambiguous. Adria International Group v. Ferre Dev., Inc., 241 F3d 103 (1st Cir 2001). In Graphics Supply v. Polychrome Corp., 116 F.3d 464 (1st Cir 1997), the court determined that where the terms of the contract are clear and unambiguous, a party may not offer external evidence to change the terms of the contract for his benefit, and to the detriment of the other party.

The case law discussed above requires that the stipulation be taken at face value and its clauses be read literally.  Since the meaning of the stipulation and its terms are clear, no extrinsic evidence provided by the parties will be

allowed by this Court. The pertinent clause in the stipulation is paragraph 7 which reads as follows:

> The parties hereby agree to the immediate release, except as otherwise stated in this Stipulation, of any and all garnishments and/or attachments in favor of ACC encumbering any of Debtor's assets, including but not limited to the [sic] medical and medical equipment and the accounts receivables from the medical insurance companies. [Emphasis ours]

Black's Law Dictionanry, 9th Edition , 2009 defines the legal term "release" as follows:

> Liberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced. – Also termed discharge; surrender 2. The relinquishment or concession of a right, title, or claim.

The language of paragraph 7 of the Stipulation is clear and leaves no room for interpretation by the parties or this Court. The use of the term "release" removes all doubt that any rights ACC may have had over the equipment and account receivables has been extinguished.

However, even if the Court has erred with regards to the meaning of the terms of the stipulation and the use of the "parol evidence rule", the fact remains that the perfection of the security interest once held by ACC over the medical equipment and account receivables of MARC is flawed. The attachments are no longer valid pursuant to Rule 56.4 of the Puerto Rico Rules of Civil Procedure. Rule 56.4 states that for a garnishment over chattel property to be perfected, the court has to take it into custody via a custodian assigned by the court. For an embargo or garnishment over chattel property to continue in existence, the property has to remain in the possession of the court appointed custodian. Burgos v. Berretiaga & Martin, 33 D.P.R. 611 (1924). In Burgos, the court concluded that the embargo was dissolved by the loss of the possession of the garnished chattel property. The record in the case demonstrates that on two separate occasions the medical equipment was turned over to a private party. The first

party was RTCI, Inc in exchange for a monthly rental fee in May 2009, and as per the terms of the stipulation the property was tuned over to plaintiff MARC in September 2009. The fact that the property was turned over to these two parties effectively dissolved the embargo.

CONCLUSION:

Based upon the foregoing, this Court determines that the plain meaning of the stipulation released any and all rights, attachments and garnishments ACC had over the equipment held by MARC. ACC is an unsecured creditor, and is therefore not entitled to payments for adequate protection. It is further ordered that ACC turn over the amount of $36,040.46 to MARC within thirty (30) days in accordance with the terms of the stipulation.  The Court does not award sanctions or damages to MARC at this time. However, failure to turn over the monies to MARC within the above mentioned time frame will result in a hearing being scheduled to determine appropriate sanctions and/or damages.

SO ORDERED.

Ponce, Puerto Rico, this 10 day of February, 2010.

Brian K. Tester
U.S. Bankruptcy Judge

c:     DEBTOR(S)
       ADVANCED CARDIOLOGY CENTER, CORP
       MAYAGUEZ ADVANCED RADIOTHERAPY CENTER
       FAUSTO D GODREAU ZAYAS
       ALEXIS FUENTES HERNANDEZ